**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| MARK FETTERS, | CASE NO. 1:12-CV-1826 |
| Plaintiff, | |
| v. | MAGISTRATE JUDGE VECCHIARELLI |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | **MEMORANDUM OPINION AND ORDER** |

Plaintiff, Mark Fetters ("Plaintiff"), challenges the final decision of Defendant, Michael J. Astrue, Commissioner of Social Security ("Commissioner"), denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 423, 1381(a). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2). (Doc. No. 12.)  For the reasons set forth below, the Commissioner's final decision is AFFIRMED.

## I.  PROCEDURAL HISTORY

On February 4, 2009, Plaintiff protectively filed his application for SSI, alleging a disability onset date of February 5, 2009.[1] (Transcript ("Tr.") 13.) The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an

---

[1] Plaintiff previously applied for Disability Insurance Benefits ("DIB"), which were denied on October 28, 2008. (Tr. 125-26.) He does not raise any arguments regarding his earlier application.

administrative law judge ("ALJ").  (*Id*.)  On July 13, 2010, an ALJ held Plaintiff's hearing.  (*Id*.)  Plaintiff participated in the hearing, was represented by counsel, and testified.  (*Id*.)  A vocational expert ("VE") also participated and testified.  (*Id*)  On August 26, 2010, the ALJ found Plaintiff not disabled.  (Tr. 26.)  On May 23, 2012 , the Appeals Council declined to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision.  (Tr. 1.)

On July 17, 2012, Plaintiff filed his complaint to challenge the Commissioner's final decision.  (Doc. No. 1.)  On November 20, 2012, Plaintiff filed his Brief on the Merits.  (Doc. No. 14.)  On December 28, 2012, the Commissioner filed his Brief on the Merits.  (Doc. No. 15.)  Plaintiff did not file a Reply Brief.

Plaintiff asserts that substantial evidence does not support the ALJ's formulation of his residual functional capacity ("RFC") to include light work, and that new and material evidence merits remand in this case.

## II.  EVIDENCE

### A.  Personal and Vocational Evidence

Plaintiff was born on July 16, 1957, and was 51 years old on the alleged onset date.  (Tr. 20.)  He completed the tenth grade.  (Tr. 36.)  Plaintiff had past relevant work as a driver and a wastewater tester.  (Tr. 20.)

### B.  Medical Evidence Considered by the ALJ

#### 1.  Treating Providers

Records in the transcript reflect that Plaintiff had a history of chronic deep venous thrombosis ("DVT").  Throughout 2006 and early 2007, lower extremity venous

duplex scans revealed DVTs in both his right and left legs.  (Tr. 289 (March 7, 2006), 290 (July 14, 2006), 291 (December 4, 2006), 292 (January 27, 2006).)

On March 10, 2007, Plaintiff reported to the emergency department at Memorial Hospital of Geneva ("Memorial"), complaining of low back pain and stating that he required refills of his medications "until Monday."  (Tr. 353.)  Emergency department staff prescribed oxycodone.  (Tr. 356.)  On March 27, 2007, Plaintiff returned to Memorial, again complaining of low back pain and reporting that he had run out of his pain medication.  (Tr. 341.)  He stated that he was scheduled to begin pain management on April 2, 2007, but could not tolerate the pain until then.  (*Id*.) Emergency department staff prescribed oxycodone, diagnosed Plaintiff with chronic back pain and high blood pressure, and discharged him in stable condition.  (Tr. 337, 341.)  On June 8, 2007, Plaintiff reported to the emergency department at Memorial, complaining of lower back pain, and reporting that he was out of his medications.  (Tr. 330.)  He told emergency department staff that he was to begin pain management therapy in five days, and requested Oxycontin.  (*Id*.)  Memorial staff prescribed Plaintiff Robaxin for back spasms and Lodine for pain, and discharged him.  (Tr. 333.)

A March 26, 2008 lower extremity venous duplex scan revealed DVTs in Plaintiff's right leg, but not his left.  (Tr. 293.)

On June 18, 2008, Susan E. Stephens, M.D., examined Plaintiff upon referral from his family physician, Peter Franklin, M.D., after Plaintiff complained of back pain. (Tr. 287-88.)  Dr. Stephens noted Plaintiff's five-year history of back pain, beginning when he fell off of a roof while shoveling snow, as well as his history of DVTs, which required him to use Coumadin daily.  (Tr. 287.)  At the exam, Plaintiff ambulated without

3

assistance, and had full, painless range of motion in his hips.  (*Id*.)  Examination revealed no tenderness and a good range of motion in the lumbosacral spine.  (*Id*.)  Plaintiff's motor skills were five out of five, and straight leg raise was negative bilaterally.  (*Id*.)  A diagnostic study revealed lumbar spondylosis with decreased height at the L5-S1 level.  (Tr. 288.)  Dr. Stephens diagnosed Plaintiff with lumbar disc disease with stenosis, instructed him to obtain another MRI of his back, and recommended that he lose at least 50 pounds.  (*Id*.)

An October 7, 2008 MRI of Plaintiff's back revealed: "(1) minimal disc bulge at L3-4; (2) very mild diffuse bulging of L4-5 with broad based mild protrusion of disc material into the left neural foramen . . ; [and] (3) no change very small midline disc herniation at L5-S1 without thecal sac compression."  (Tr. 674.)

At some point after November 21, 2008, Dr. Franklin completed an undated basic medical worksheet for the Ohio Department of Jobs and Family Services.  (Tr. 295-96.)  He indicated that his areas of specialty were "f[amily] p[ractice]/pain."  (Tr. 295.)  He noted that he had last examined Plaintiff on November 21, 2008.  (*Id*.)  Dr. Franklin reported a diagnosis of "722.10 HNP,"[2] noting that Plaintiff had an "L4-5 protrusion into [the] foramen."  (Tr. 296.)  He assigned Plaintiff the following limitations: standing/walking two hours in an eight-hour workday; standing/walking for 30 minutes without interruption; sitting for six hours in an eight-hour workday; sitting for one hour without interruption; and frequently and occasionally lifting/carrying six to ten pounds.

---

[2]    722.10 is the ICD-9-CM diagnosis code for displacement of lumbar intervertebral disc without myelopathy.  *See* ICD9Data.com, http://www.icd9data.com/2008/Volume1/710-739/720-724/722/722.10.htm (last visited Feb. 5, 2013).

4

(Tr. 295.)  Dr. Franklin opined that Plaintiff was moderately limited in: pushing/pulling, bending, reaching, handling, and repetitive foot movements.  (Tr. 295.)  He noted that he had based his findings on his "review of record."  (*Id*)  Dr. Franklin characterized Plaintiff's health status as "deteriorating."  (Tr. 296.)

On November 10, 2009, Plaintiff presented to the emergency department at Ashtabula County Medical Center ("Ashtabula"), complaining of pain and swelling in his left leg.  (Tr. 763.)  Plaintiff reported to emergency department staff that he had taken extra Coumadin for the prior few days to alleviate the pain and swelling.  (Tr. 764.)  Emergency department staff diagnosed Plaintiff with coagulopathy, DVT and cellulitis of the lower extremity.  (Tr. 761.)  Plaintiff was discharged in stable condition on November 16, 2009, with instructions to follow up with his treating physician.  (Tr. 768.)

On March 2, 2010, Plaintiff presented to the emergency department at Ashtabula, complaining of swelling, pain, and hardness in his legs.  (Tr. 697.)  He reported that he had shortness of breath, was taking Coumadin, and smoked.  (Tr. 700.)   He was also taking Lasix, but had run out of it.  (*Id*.)  Emergency department staff diagnosed Plaintiff with DVTs, hypocoagulopathy obesity, tobacco abuse, lower extremity edema, and cellulitis.  (Tr. 709.)  A physician prescribed Vicodin, Lovenox and Lasix, and instructed Plaintiff to follow up with his pulmonary physician.  (Tr. 701, 703-04.)  Plaintiff returned to Ashtabula on March 5, 2010, complaining of pain and swelling in his left leg.  (Tr. 684.)  Emergency department staff noted his complaints of tenderness, redness and pedal edema, and prescribed oxycodone as needed for pain. (Tr. 684, 686.)  Plaintiff was discharged with instructions to follow up with his pulmonary physician at his scheduled appointment.  (Tr. 688.)

A June 5, 2010 lower extremity venous duplex scan revealed an acute DVT involving Plaintiff's left popliteal vein.  (Tr. 773.)  On June 18, 2010, Plaintiff was examined by Frank G. Sailors, D.O.  (Tr. 770.)  Dr. Sailors noted that Plaintiff was there to establish care and monitoring for long term anticoagulant use.  (Tr. 770-71.)  Plaintiff complained of pain and problems walking, and requested refills of his medications.  (*Id.*)  Dr. Sailors advised Plaintiff to continue taking his Coumadin and checking his coagulation levels as before.  (Tr. 771.)

On August 3, 2010,[3] Matthew Pawlicki, M.D., a physician at Lake House,[4] examined Plaintiff.  (Tr. 790.)  Dr. Pawlicki opined that Plaintiff required a sit/stand option, and the ability to: alternate between sitting and standing every 30 minutes; elevate his legs during the workday; and take breaks at will.  (Tr. 793.)  However, Dr. Pawlicki noted that his conclusions were "with regard to [Plaintiff's] chronic venous insufficiency.  For workplace restrictions . . . due to chronic back pain, [he] would defer to [the] results of a comprehensive functional capacity evaluation."  (*Id.*)

---

[3]  At the conclusion of Plaintiff's July 13, 2010 administrative hearing, the ALJ, noting that Plaintiff's counsel had experienced difficulty obtaining information from some of Plaintiff's treating physicians, agreed to keep the record open for 30 days.  (Tr. 54-55.)  Plaintiff's counsel submitted Dr. Pawlicki's records on August 10, 2010.  (Tr. 790.)

[4]  The transcript reflects that Plaintiff resided at Lake House, a halfway house in Lake County, beginning June 26, 2010, after completing drug treatment at the Lake County Jail.  (Tr. 39, 785.)  The Lake County court granted Plaintiff intervention in lieu of conviction after he was charged with two counts of deception to obtain dangerous drugs.  (*Id.*)

### C. Hearing Testimony

#### 1. Plaintiff's Hearing Testimony

At his July 13, 2010 administrative hearing, Plaintiff testified as follows:

Plaintiff was no longer taking narcotic pain medications, and it was "really hard" to deal with his back pain. (Tr. 44-45.) Over-the-counter medications helped "just a little bit." (Tr. 45.) Plaintiff was 5' 11" tall weighed 280 or 285 pounds. (Tr. 46.) He had lost his driver license in 2005 after driving without insurance, and had not sought reinstatement because he was not able to sit long enough to drive, and because he did not want to drive while on his medications. (Tr. 48-49.)

#### 2. Vocational Expert's Hearing Testimony

The ALJ described the following hypothetical individual to the VE, assuming an individual of Plaintiff's age and education:

> [L]imited to no more than light work, but needed a sit/stand option approximately every 30 minutes; occasional postural activities; no pushing or pulling against any resistance with the lower extremities, and also . . . no foot controls. He should be limited to simple, routine, repetitive tasks with minimal public interaction.

(Tr. 52.) The VE opined that, while the hypothetical individual could not perform any of Plaintiff's past work, he could perform work as an agricultural produce sorter or mail clerk. (Tr. 52-53.)

### D. Medical Evidence Submitted to the Appeals Council

After the ALJ denied his application for benefits, Plaintiff submitted additional evidence to the Appeals Council. (Tr. 5.) That evidence reflected the following:

Dr. Pawlicki's treatment records, from January 1, 2011 through March 19, 2012,

7

note the following conditions: DVTs, edema, stasis dermatitis, a stage two ulcer, pancreatitis, chronic obstructive pulmonary disorder, and low back pain. (Tr. 803-12, 893-903.)

On January 12, 2011, Plaintiff arrived at the emergency department at Geneva Medical Center ("Geneva"), complaining of tender, swollen areas on his shins. (Tr. 816.) A physician diagnosed cellulitis and prescribed Bactrim. (*Id*.) On January 16, 2011, Plaintiff returned to the emergency department at Geneva, and reported lower extremity swelling, redness and pain. (Tr. 815.) A physician diagnosed him with cellulitis and prescribed Kuflex and doxycycline. (*Id*.)

On June 10, 2011, Plaintiff reported to the emergency department at Geneva, complaining of abdominal pain. (Tr. 835.) He was diagnosed with hyppokalemia, prescribed medication and discharged. (Tr. 837.)

On July 15, 2011, Plaintiff underwent a functional capacity exam performed by physical therapist Jennifer L. Diehl. (Tr. 824-29.) She concluded that Plaintiff performed at the sedentary work level, noting that he demonstrated "some inconsistencies" during the evaluation, and had difficulty completing the tests. (Tr. 824.) She opined that Plaintiff could occasionally lift 17 pounds from the floor to above his waist, and from his shoulder to overhead, and 24 pounds from his knuckles to his shoulders. (Tr. 825.) She noted that Plaintiff could occasionally: sit, stand, walk, climb ladders and stairs, balance, bend at the trunk, twist his trunk, squat, reach, handle and use foot pedals. (*Id*.) She concluded that Plaintiff was unable to kneel, crouch or crawl. (*Id*.)

A July 22, 2011 exercise stress test revealed that Plaintiff had a markedly

8

decreased functional capacity.  (Tr. 920.)

### III.   STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when he establishes disability within the meaning of the Act.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981).  A claimant is considered disabled when he cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 416.905(a).

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process.  20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4); *Abbott v. Sullivan,* 905 F.2d 918, 923 (6th Cir. 1990).  First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time he seeks disability benefits.  20 C.F.R. §§ 404.1520(b) *and* 416.920(b).  Second, the claimant must show that he suffers from a "severe impairment" in order to warrant a finding of disability.  20 C.F.R. §§ 404.1520(c) *and* 416.920(c).  A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities."  *Abbot,* 905 F.2d at 923.  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience.  20 C.F.R. §§ 404.1520(d) *and* 416.920(d).  Fourth, if the claimant's impairment does not prevent him from doing his

past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) *and* 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c), *and* 416.920(g).

### IV.   SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. Plaintiff has not engaged in substantial gainful activity since February 4, 2009, the application date.

2. Plaintiff has the following severe impairments: degenerate disc disease of spine; obesity; deep vein thrombosis of lower extremities; depression, and anxiety.

3. Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

4. After careful consideration of the entire record, the undersigned finds that Plaintiff has the RFC to perform light work as defined in 20 CFR 416.967(b) except that Plaintiff must have the option to alternate between sitting and standing every 30 minutes. He is limited to occasional postural activities and is not push or pull with his lower extremities.  He is able to perform work activities that do not involve the use of foot controls.  Furthermore, Plaintiff is able to work jobs where is limited to simple routine and repetitive tasks and no public interaction.

5. Plaintiff is unable to perform any past relevant work.

6. Plaintiff born on July 16,1957 and was 51 years old, which is defined as an individual closely approaching advanced age, on the date the application was filed.

7. Plaintiff has a limited education and is able to communicate in English.

\* \* \*

10

> 9. Considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.
>
> 10. Plaintiff has not been under a disability, as defined in the Act, since February 4, 2009, the date the application was filed.

(Tr. 15-22.)

## V.  LAW & ANALYSIS

### A.  Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id.* However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by

11

substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion.  *Ealy,* 594 F.3d at 512.

### B. Plaintiff's Assignments of Error

Plaintiff argues that substantial evidence does not support the ALJ's conclusion that Plaintiff is capable of performing light work.  He also contends that the evidence he submitted to the Appeals Council is new and material and, thus, merits remand.  The Commissioner argues that substantial evidence supports the ALJ's conclusions in this case.  The Commissioner also argues that, because the evidence Plaintiff submitted to the Appeals Council was not material and because Plaintiff failed to show good cause for not obtaining it earlier, the new evidence does not merit remand.

### 1. The ALJ's Determination of Plaintiff's RFC

Plaintiff contends that substantial evidence does not support the ALJ's conclusion that Plaintiff is capable of performing light work because the ALJ failed to assign appropriate weight to the opinions of treating physicians Franklin and Pawlicki.  The Commissioner argues that substantial evidence supports the ALJ's decision to assign these opinions less than controlling weight.  Plaintiff's arguments are not well taken.

"An ALJ must give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in the case record.'"  *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)) (internal quotes omitted).  Conversely, a treating source's

opinion may be given little weight if it is unsupported by sufficient clinical findings and is inconsistent with the rest of the evidence. *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993). If an ALJ decides to give a treating source's opinion less than controlling weight, he must give "good reasons" for doing so that are sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinion and the reasons for that weight. *See Wilson*, 378 F.3d at 544 (quoting S.S.R. 96-2p, 1996 WL 374188, at *5 (S.S.A.)). This "clear elaboration requirement" is "imposed explicitly by the regulations," *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 400 (6th Cir. 2008), and its purpose is to "let claimants understand the disposition of their cases" and to allow for "meaningful review" of the ALJ's decision, *Wilson*, 378 F.3d at 544 (internal quotation marks omitted). Where an ALJ fails to explain his reasons for assigning a treating physician's opinion less than controlling weight, the error is not harmless and the appropriate remedy is remand. *Id.*

Here, the ALJ identified two reasons for assigning "slight weight" to Dr. Franklin's opinion: first, that it was "conclusory, providing very little explanation of the evidence relied on in forming that opinion," and, second, that it "appears to rest at least in part on an assessment of an impairment outside the doctor's area of expertise." (Tr. 20.) Plaintiff characterizes the ALJ's conclusion as "inaccurate in light of Dr. Franklin's specialties in family practice and pain management, his reference to and communication with other specialists regarding Plaintiff's condition and his knowledge of and review of [Plaintiff's] record before identifying Plaintiff's limitations." (Plaintiff's Brief ("Pl. Br.") at 12.)

Substantial evidence supports the ALJ's determination that Dr. Franklin's opinion

13

was conclusory. Rather than identifying the "observations and/or medical evidence" that led to his conclusions regarding Plaintiff's limitations – as requested by the state agency form – Dr. Franklin merely responded "review of record." (Tr. 295.) He cited to no diagnostic test results, nor to any of his own treatment records to support his conclusions. Accordingly, the ALJ did not err in declining to assign controlling weight to Dr. Franklin's opinion on the basis that it was not supported by any explanation of the evidence on which he relied in forming it.

Substantial evidence, however, does not support the ALJ's conclusion that Dr. Franklin's opinion was entitled to less than controlling weight because he made an assessment related to an impairment outside his area of expertise. In making this conclusion, the ALJ did not identify the ailment that was outside of Dr. Franklin's specialties of family medicine and pain management. Nor did he identify the evidence on which he relied in making this conclusion. Although the Commissioner contends that "at least part of the opinion was based on assessing impairments in which Dr. Franklin did not specialize" (Commissioner's Brief ("Comm'r. Br. ") at 12), the Commissioner also fails to identify which ailment was outside of Dr. Franklin's specialty. This error, however, does not require remand in this case, as substantial evidence supports the first basis for the ALJ's decision to assign less than controlling weight to Dr. Franklin's opinion. It is well settled that, where "remand would be an idle and useless formality," courts are not required to "convert judicial review of agency action into a ping-pong game." *Kobetic v. Comm'r of Soc. Sec.*, 114 F. App'x 171, 173 (6th Cir. 2004) (quoting *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766, n.6 (1969)).

Further, substantial evidence supports the ALJ's decision to assign less than

14

controlling weight to Dr. Pawlicki's opinion.  The ALJ noted that,"while [Dr. Pawlicki] does have a treating relationship with [Plaintiff], the treatment history is quite brief."  (Tr. 20.)  The ALJ also pointed to Dr. Pawlicki's statement that, with respect to limitations arising out of Plaintiff's back issues, he would defer to the results of a functional capacity evaluation.  (*Id*.)  The record reflects that Dr. Pawlicki treated Plaintiff on only one occasion prior to rendering his opinion regarding Plaintiff's functional capacity.  (Tr. 792, 803.)  It also reflects that he did indicate that, with respect to the condition of Plaintiff's back, he would defer to the results of a separate evaluation.  (Tr. 793.)[5]

Plaintiff also contends that, because there are no medical opinions in the record that contradict the opinions of Drs. Franklin and Pawlicki, their opinions regarding his limitations are unrefuted and, thus, entitled to controlling weight.  This argument lacks merit.  It is well established that "the ALJ – not a physician – ultimately determines a claimant's RFC."  *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010).  "Although physicians opine on a claimant's [RFC] to work, ultimate responsibility

---

[5] The Commissioner contends that other evidence in the record supports the ALJ's decision to assign less than controlling weight to the opinions of Plaintiff's treating physicians, including that Dr. Pawlicki evaluated Plaintiff's capacity after the July 2010 administrative hearing, and that Dr. Franklin's conclusions were inconsistent with the conservative treatment Plaintiff received. (Comm'r Br. at 12.)  The ALJ , however, did not offer any of these reasons to support his decisions regarding the appropriate weight to assign to the physician's opinions.  It is well established that "the courts may not accept appellate counsel's *post hoc* rationalizations for agency action. It is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself." *Berryhill v. Shalala,* 4 F.3d 993, *6 (6th Cir. Sept. 16, 1993) (unpublished opinion) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 50 (1983) (citation omitted)).  Accordingly, this Court cannot consider these arguments, however, meritorious they may be.

15

for capacity-to-work determinations belongs to the Commissioner." *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 578 (6th Cir 2009). Accordingly, in this case, the ALJ was not required to rely on a physician's opinion regarding Plaintiff's limitations to determine his RFC. Further, the ALJ cited to evidence in the record in determining that Plaintiff was capable of performing light work. *See Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) (noting that, under the regulations, "the ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of [the claimant's] residual functional capacity") (internal quotation marks omitted). In his decision, the ALJ engaged in a lengthy discussion of Plaintiff's treatment history (Tr. 17-20), noting the conservative nature of the treatment that Plaintiff received (Tr. 19), and that there was no evidence in the record "of 'disabling' pain or associated symptoms" (Tr. 20). For example, the ALJ noted that, with one exception, "despite [Plaintiff's] repeated visits to the emergency room, he was treated with medication and discharged home with medication," and that "the medical records show[ed] only mild findings associated with [Plaintiff's] degenerative disc disease." (Tr. 19.) Accordingly, substantial evidence supports the ALJ's conclusion regarding Plaintiff's RFC.

### 2. Plaintiff's New Evidence

Plaintiff contends that the evidence he submitted to the Appeals Council is new and material and, thus, merits the remand of this case. Under 42 U.S.C. § 405(g), a court "may . . . remand [a] case to the Commissioner . . . for further action by the Commissioner . . . and it may at any time order additional evidence to be taken before

the Commissioner . . . , but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." The party seeking remand under § 405(g) bears the burden of showing that remand is appropriate. *See, e.g.,* [Sizemore v. Sec. of Health & Human Servs., 865 F.2d 709, 711 (6th Cir. 1988)](#).

Plaintiff argues that the evidence he submitted to the Appeals Council is "new and there is good cause for submitting it earlier as it was not in existence at the time of [his] hearing," and that the evidence is "material as it speaks to the issue of functional capacity." (Pl. Br. at 15.) These arguments lack merit. The evidence at issue consists entirely of records of treatment and evaluations Plaintiff received or underwent after August 26, 2010 – the date of the ALJ's decision. Further, none of the evidence contains opinions regarding Plaintiff's ability to work as of August 26, 2010. Accordingly, the evidence is not material to his claim that he was disabled at the time of the ALJ's decision. *See, e.g.,* [Oliver v. Sec'y of Health and Human Servs., 804 F.2d 964, 966 (6th Cir. 1986)](#) (finding that medical evidence compiled after the ALJ's decision that Claimant was not disabled was not material because it did reveal further information about the claimant's ability to work as of the date of the ALJ's decision and, thus, did not affect that decision). Further, the medical records were prepared after the date of the ALJ's decision, and Plaintiff has not explained his failure to obtain the functional capacity exam prior to the ALJ's decision, despite receiving a 30-day extension within which to do so. Accordingly, Plaintiff cannot demonstrate the good cause necessary for remand under § 405(g). *[Id](#)*.

17

## VI. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

**IT IS SO ORDERED**.

s/ <i>Nancy A. Vecchiarelli</i><br>U.S. Magistrate Judge

Date: February 7, 2013